ARTHUR E. KLAIBER, PLAINTIFF-RESPONDENT, v. JO-
SEPH FRANK, JR., EXECUTOR OF THE LAST WILL
AND TESTAMENT OF JOSEPH FRANK, DECEASED,
DEFENDANT-APPELLANT.

Argued October 29, 1951—Reargued December 3, 1951—
Decided February 11, 1952.

*Mr. John J. Gaffey* argued the cause for appellant (*Messrs. Minard, Cooper, Gaffey & Webb*, attorneys).

*Mr. Benjamin Shanefield* argued the cause for respondent.

The opinion of the court was delivered by

HEHER, J. The point of inquiry here is whether a judgment recovered by one Diamente Mehos against the defendant executor on September 1, 1949, for $6,206.61 and attorneys' fees of $650 and costs in the Circuit Court of the Fifteenth Circuit of the State of Florida, in and for Broward County, is within the protection of the full faith and credit principle embodied in article IV, section I of the United States Constitution and the complementary statute, 28 *U. S. C., section* 1738, or is subject to collateral attack for want of jurisdiction *in personam* because (a) service of process was made in disregard of the immunity granted by section 25 of the Uniform Criminal Extradition Act, then in force in Florida, and (b) there was an abuse of the process provided by the Extradition Act to render the now deceased defendant available for the personal service of process in Florida and thus a fraud upon the Florida court.

The judgment was assigned to the plaintiff herein; and this action (in two counts) was brought May 9, 1950, upon (1) the Florida judgment itself and (2) the underlying promissory note. The judgment debtor died November 24, 1950. His death was suggested on the record and his executor substituted as a party defendant. The issue was tried to the court without a jury; and there were findings of fact and judgment for plaintiff on the Florida judgment for the sum of that recovery. Defendant's appeal to the Appellate Division of the Superior Court was certified here for decision on our own motion.

This is the situation of fact, stipulated by the parties:

On September 26, 1947, at Fort Lauderdale, in the State of Florida, defendant's testator made and delivered to Diamente

Mehos his promissory note for $5,566.49, payable with interest on December 1 ensuing. The note was secured by a mortgage covering the personal assets of a licensed tavern business then owned and conducted by the testator at Fort Lauderdale under the name and style of "The Six and Six Bar." Frank defaulted in the payment of the note at maturity; and on December 23 following, at the instance of the payee-mortgagee, a criminal information was issued out of the County Court of Broward County, in Florida, by the prosecuting attorney for that county, in the name of the state, charging that Frank had sold certain of the mortgaged property without the mortgagee's written consent, with intent to defeat, hinder and delay the enforcement of the lien, in contravention of section 818.01 of *Florida Statutes Annotated*. The information was supported by an affidavit made by the mortgagee certifying, *inter alia*, that on the prior November 29 Frank did remove certain of the mortgaged goods from the tavern premises and hide and conceal and make sale of them, all without the affiant's knowledge and consent. The Governor of New Jersey honored Florida's requisition for Frank's extradition; and on *habeas corpus* the rendition warrant was sustained and the writ dismissed. The Appellate Division of the Superior Court affirmed the judgment of dismissal. *Frank v. Naughright,* 1 *N. J. Super.* 242 *(App. Div.* 1949). On June 1, 1949, at Newark, New Jersey, Frank was surrendered to the Sheriff of Broward County, Florida, and the following day was lodged in the jail of that county. On the very next day, June 3, a *praecipe* for summons in an action *ex contractu* brought by Mehos against Frank on the promissory note was filed in the Broward County Circuit Court; and on the same day the clerk of the court issued a summons *ad respondendum* directed to Frank commanding his appearance in the action on or before July 4 following, on pain of an adverse judgment in the event of his default. On June 4 Frank was served with the summons *ad respondendum* while incarcerated in the county jail. On June 29 the prosecuting attorney, Miller, and one Tolar, entered a joint appearance

"as co-counsel with Saunders, Buckley & O'Connell as counsel of record for the plaintiff." There was no appearance by Frank; and on September 1 ensuing, on Miller's motion, a judgment by default was entered for the principal and interest allegedly due upon the note and the attorney's fees and costs. The record contains an affidavit made March 5, 1951, by the prosecuting attorney, Miller, certifying that he was then the attorney for Mehos and "was her attorney at the time she obtained a promissory note" from Frank on September 26, 1947; that he was "familiar with all the facts in the case"; and that no payment had been made on the note, and the full principal sum with interest was due and owing to his client, Mehos. The criminal information was not prosecuted, and there is no explanation of the failure so to do. Frank "remained in jail until the end of June, 1949, when he was permitted to leave the same, never having been brought to trial for the matters for which he had been extradited." It was agreed that the "civil action arises out of the same facts as the criminal proceedings," and that the "service of process was * * * before" Frank "had had reasonable opportunity to return to the State of New Jersey."

It was adjudged in the Superior Court that the immunity from service of personal process in civil actions arising out of the same facts as the criminal proceeding extended by section 25 of the Uniform Criminal Extradition Act (9 *U. L. A.*), in effect in Florida (*F. S. A., sec.* 941.25) and in New Jersey (*R. S.* 2:185–34), is in essence "a personal privilege" granted for the "personal benefit" of the person brought into the state on or after waiver of extradition which may be waived, and is waived if the person thus served does not move to vacate the service before judgment is taken; and that here there was such waiver, and so the judgment, based upon a voidable rather than a void service of process, is entitled to full faith and credit under the cited article IV, section I of the Federal Constitution and the implemental statute.

But there was a clear abuse of the executive and judicial

processes which infected and rendered void the seeming jurisdiction *in personam*. The inference is irresistible that resort was had to extradition in an endeavor to render Frank subject to the judgment of the Florida court in a civil action, and thus to enforce payment of the debt. The hearing judge in the Superior Court found there was no "clear proof" of fraud on the Florida jurisdiction, although the fact that the "district attorney, subsequent to the bringing of suit, became associated with the attorneys who brought it, is, of course suspicious." Yet, as we have seen, the prosecuting attorney was the attorney of Mehos at the time of the making and delivery of the promissory note and had sufficient knowledge of "all the facts in the case" to make affidavit that no payment had ever been made on the note. The criminal action was but a pretext to bring the defendant within the domain of the Florida court for the purpose of proceeding against him *civiliter*. The course of proceeding in Florida bespeaks this design beyond reasonable doubt. It was not a *bona fide* invocation of the law for interstate rendition. It was rather a perversion of the extradition process to the service of a private end wholly foreign to its nature and function. The extradition proceeding was pursued relentlessly for a year and a half after the issuance of the rendition warrant until the dismissal of the writ of *habeas corpus* was affirmed on appeal; and when Frank was finally brought into Florida the civil action was begun forthwith and the prosecution of the criminal information abandoned. Civil jurisdiction was plainly the object of the extradition. The affidavit of Mehos in support of the criminal information was taken by the prosecuting attorney in his public capacity, but he was then also the attorney of Mehos in his private professional capacity; and when Frank was once brought within the Florida jurisdiction his interest in the criminal action ceased. The criminal information had served its purpose. The motive is laid bare by the deed.

Extradition may not be made subservient to purely private interests. It is well settled that jurisdiction *in per-*

*sonam* in a civil cause is not acquired by the service of process upon a defendant who is brought into the jurisdiction of the court by force, fraud, or deceit, for that very purpose. *Williams v. Reed,* 29 *N. J. L.* 385 (*Sup. Ct.* 1862) ; *Rutledge v. Krauss,* 73 *N. J. L.* 397 (*Sup. Ct.* 1906) ; *Dobson v. Pearce,* 12 *N. Y.* 156 (*Ct. of App.* 1854) ; *Metcalf v. Clark and Wilson,* 41 *Barb.* 45 (*N. Y. Sup. Ct.* 1864) ; *Bimeler v. Dawson,* 5 *Ill.* 536 (1843.) ; *Dunlap & Co. v. Cody,* 31 *Iowa* 260 (*Sup. Ct.* 1871) ; *Rankin v. Goddard,* 54 *Me.* 28 (*Sup. Jud. Ct.* 1866) ; *Wells v. Gurney,* 8 *Barn. & C.* 769, 108 *Eng. Rep.* (*Full Reprint*) 1229 (*King's Bench Div.* 1828) ; *Ex parte Johnson,* 167 *U. S.* 120, 17 *S. Ct.* 735, 42 *L. Ed.* 103 (1897) ; *Wyman v. Newhouse,* 93 *F. 2d* 313 (*C. C. A. 2d* 1937), *certiorari* denied, 303 *U. S.* 664, 58 *S. Ct.* 831, 82 *L. Ed.* 1122 (1938). And where a criminal action is a mere maneuver for bringing the defendant within the reach of the judicial process of that jurisdiction, and not to serve the ends of public justice; there is an abuse of process which precludes jurisdiction *in personam.* *Thomas v. Blackwell,* 172 *Okla.* 487, 46 *Pac. 2d* 509 (*Sup. Ct.* 1935) ; *In re Walker,* 61 *Neb.* 802, 86 *N. W.* 510 (*Sup. Ct.* 1901) ; *Williams v. Bacon,* 10 *Wend.* 636 (*N. Y. Sup. Ct.* 1834). Criminal process may not be used "as a means of bringing a party into a jurisdiction in order that service of civil process may be had on him there." *Crusco v. Strunk Steel Co.,* 365 *Pa.* 326, 74 *A. 2d* 142 (*Sup. Ct.* 1950). In a case involving a somewhat similar abuse of the extradition process, this is said : "The certain remedy to prevent its growth is to deprive all persons who participate in the misuse of the power to extradite persons alleged to be criminals from justice of the fruits resulting from such participation." *Compton, Ault & Co. v. Wilder,* 40 *Ohio St.* 130 (*Dist. Ct.* 1883). To the same effect is *Adriance v. Lagrave,* 59 *N. Y.* 110 (*Ct. of App.* 1874). And in *Thomas v. Blackwell,* cited *supra,* where the plaintiff in a civil action was also the prosecutor in criminal proceedings, and the civil and criminal proceedings were instituted on the same day, the holding was:

"These facts presumptively negative the theory that the bringing of the civil action and the commencement of the criminal proceedings were any mere coincidence. Such facts, moreover, are strongly persuasive of a warrantable conclusion that there has been an abuse of criminal proceedings by a private litigant for the purpose of subjecting a nonresident to civil liability. Under such circumstances an effective bar should be placed upon a practice which seeks the misuse of power to acquire jurisdiction over a person under the guise of criminal proceedings for ultimate private gain."

Certain it is that if the executive authority of the asylum state was aware of the intent thus to use the extradition proceeding as a means to private ends, the rendition warrant could not lawfully issue. *In re Slauson,* 73 *Fed.* 666 (*Cir. Ct. E. D. of Va.* 1896).

And, for aught that appears, Florida would on application vacate the service of process there made as an abuse of judicial power disentitling the consequent judgment to faith and credit. The answer pleaded, *inter alia,* the fraudulent use of the extradition process in the procurement of the judgment and concealment of the fraud in violation of the cited section 25 of the Uniform Interstate Extradition Law (*F. S. A.* 1949, *section* 941.25), and a consequent want of jurisdiction *in personam*; but we have not been cited to a controlling judicial decision of Florida as to the effect of this abuse of process, and we are aware of none. We are therefore free to apply the law of the forum which would reject the service as a fraud upon the law and the judicial process and jurisdiction of the sister state. *Wyman v. Newhouse,* cited *supra.* This is consistent with our own statute adopted to provide uniform judicial notice of foreign law. *L.* 1941, *c.* 81, *s.* 1, *p.* 193, as amended by *L.* 1942, *c.* 104, *s.* 1, *p.* 365; *N. J. S. A.* 2:98–28. *Vide R. S.* 2:98–18. Unless the contrary be pleaded, it is to be presumed that common-law principles obtain in the foreign state whose judgment is the subject of controversy. *Franzen v. Equitable Life Assurance Society of the United States,* 130 *N. J. L.* 457 (*Sup. Ct.* 1943); *Kelly v. Kelly,* 134 *N. J. Eq.* 316 (*Prerog.* 1944), 135 *N. J. Eq.* 75 (*Prerog.* 1944); *Bosze*

*v. Metropolitan Life Insurance Co.,* 1 *N. J.* 5 (1948) ; *Shepherd v. Ward,* 5 *N. J.* 92 (1950) ; *Leary v. Gledhill,* 8 *N. J.* 260 (1951).

The full faith and credit clause has established throughout the federal system the common-law principle that a litigation once pursued to judgment shall be as conclusive of the rights of the parties in every other court as in the court where the judgment was rendered. *Morris v. Jones,* 329 *U. S.* 545, 67 *S. Ct.* 451, 91 *L. Ed.* 488, 168 *A. L. R.* 656 (1947) ; *Magnolia Petroleum Co. v. Hunt,* 320 *U. S.* 430, 64 *S. Ct.* 208, 88 *L. Ed.* 149, 150 *A. L. R.* 413 (1943). But it is fundamental that the principle is not operative unless the judgment be founded upon adequate jurisdiction of the parties and subject matter. *Gasquet v. Lapeyre,* 242 *U. S.* 367, 37 *S. Ct.* 165, 61 *L. Ed.* 367 (1917) ; *Roche v. McDonald,* 275 *U. S.* 449, 48 *S. Ct.* 142, 72 *L. Ed.* 365, 53 *A. L. R.* 1141 (1928) ; *Milliken v. Meyer,* 311 *U. S.* 457, 61 *S. Ct.* 339, 85 *L. Ed.* 278, 132 *A. L. R.* 1357 (1940). The judgment is not invested with this constitutional sanctity if fraud has given rise to a jurisdictional infirmity. Compare *Jaster v. Currie,* 198 *U. S.* 144, 25 *S. Ct.* 614, 49 *L. Ed.* 988 (1905). Where fraud inheres in the jurisdiction, the judgment is utterly void and inefficacious. A foreign judgment is subject to collateral attack for fraud in the procurement of the appearance of the defendant. *Gray v. Richmond Bicycle Co.,* 167 *N. Y.* 348, 60 *N. E.* 663 (*Ct. of App.* 1901) ; *Wyman v. Newhouse,* cited *supra.* A judgment so tainted has no constitutional recognition.

Thus, for want of jurisdiction *in personam,* the Florida judgment was void and not merely irregular or erroneous and voidable, and the judgment rendered thereon in this action has nothing to sustain it.

It would seem that, the Florida judgment being void, there was no merger of the cause of action; but, to obviate any question on this score, the parties stipulated on the oral argument that, in the event of a reversal on the grounds taken here, the second count of the complaint pleading a

cause of action on the promissory note would stand immune against the plea of merger of the cause of action in the judgment and the defendant executor would withdraw that defense. The stipulation now comes into play.

The judgment is accordingly reversed, and the cause is remanded for further proceedings in conformity with this opinion; costs to abide the event.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE. HEHER, WACHENFELD and BURLING—5.

*For affirmance*—Justice OLIPHANT—1.