962 A.2d 1076

MCKESSON CORP., D/B/A MCKESSON SPECIALTY DISTRIBUTION SERVICES, PLAINTIFF–APPELLANT, v. HACKENSACK MEDICAL IMAGING, D/B/A LIFESCAN DIAGNOSTIC IMAGING, DEFENDANT–RESPONDENT.

Argued December 2, 2008—Decided January 21, 2009.

*John L. Laskey,* argued the cause for appellant (*Dilworth Paxson,* attorneys).

*Joseph A. Massood,* argued the cause for respondent.

Justice RIVERA–SOTO delivered the opinion of the Court.

This appeal involves the commonplace conflict that arises when a sister state, in the exercise of its long-arm jurisdiction, enters a default judgment against a citizen of this State, and the judgment holder seeks to enforce that default judgment in our courts. The trial court determined that the sister state had proper long-arm jurisdiction over the New Jersey defendant and, therefore, the sister state's judgment was entitled to full faith and credit in New Jersey. The Appellate Division, however, reversed, concluding that the transactions between the New Jersey defendant and the

foreign jurisdiction were insufficient to satisfy the minimum contacts constitutionally required for the exercise of long-arm jurisdiction.

We conclude that, on the whole, the contacts presented in this case between the New Jersey defendant and the sister state that issued the foreign judgment were sufficient to meet the minimum contacts test necessary for the constitutional exercise of judicial power against a non-resident defendant. We therefore reverse the judgment of the Appellate Division and reinstate the judgment of the Law Division enforcing the foreign judgment and dismissing the challenge to that judgment.

## I.

Plaintiff McKesson Corp. advertises that it "[i]s the largest pharmaceutical distributor in North America" and "the nation's leading health care [information technology] company[.]" *See* http://www.mckesson.com/en_us/McKesson.com/About%2BUs/ Our%2BCompany/Our%2BCompany.html. It operates through various locations in the United States, including in the State of Texas.

In contrast, defendant Hackensack Medical Imaging, d/b/a Lifescan Diagnostic Imaging, is a professional corporation organized under the laws of the State of New Jersey and maintains its principal place of business in Hackensack. It is engaged in the business of providing radiology and imaging services—X-rays, MRIs, CAT Scans and other diagnostic procedures—to various patients and physicians exclusively at its principal place of business.

Starting in July 2005, and on nine separate occasions, defendant ordered from plaintiff two different types of contrast agents for use in defendant's imaging practice.[1] Those orders were placed

---

[1] The American Society of Radiologic Technologists explains that "[c]ontrast agents, also known as contrast media, often are used during medical imaging examinations to highlight specific parts of the body and make them easier to see. Contrast agents can be used with many types of imaging examinations, including

by plaintiff with defendant's distribution operations in Texas and consisted of the following:

| ORDER DATE | ITEM | AMOUNT |
| --- | --- | --- |
| July 19, 2005 | Ultravist® | $ 460 |
| Aug. 16, 2005 | Magnevist® | $4,900 |
| Oct. 7, 2005 | Ultravist® | $1,115 |
| Oct. 20, 2005 | Magnevist® | $4,900 |
| Nov. 16, 2005 | Ultravist® | $ 690 |
| Dec. 2, 2005 | Magnevist® | $2,450 |
| Jan. 5, 2006 | Magnevist® | $4,900 |
| Jan. 6, 2006 | Ultravist® | $ 690 |
| Feb. 6, 2006 | Ultravist® | $ 690 |

These purchases totaled $20,795 [2] and, in order to make them, defendant placed its orders, either via the telephone or through other electronic media, with plaintiff in Texas. Further, each invoice specifically provided that payment was to be made to

x-ray exams, computed tomography scans and magnetic resonance imaging." *See* https://www.asrt.org/media/pdf/contrast_eng.pdf.

Both of the ordered contrast agents are manufactured by Bayer Health Care Pharmaceuticals, Inc. The first—Ultravist®—is "a nonionic, iodinated, low-osmolar radiological contrast agent for intravascular administration[,]" http://www.berleximaging.com/html/ultravist/purchasing_info.html, while the second,—Magnevist®—was "the world's first contrast agent for use in MRI" and "is still the MR market leader with a broad range of adult and pediatric clinical indications in CNS, head, neck and body (excluding the heart) of any MR contrast agent." http://www.berleximaging.com/html/magnevist/product_info.html.

[2] The invoices attached to plaintiff's original complaint in Texas total $20,795. Plaintiff's original complaint, however, alleges that "[t]he total amount due to Plaintiff from the Defendant arising from the account of the Defendant with Plaintiff, after allowing all just and lawful offsets, payments and credits allowable on the account, is the total sum of Twenty[-]Four Thousand Four Hundred Six and 28/100 Dollars ($24,406.28)." The default judgment entered against defendant by the District Court of Dallas County, Texas is in the amount prayed for in plaintiff's complaint: $24,406.28. Nothing in this scant record reconciles the difference between the aggregate of the invoices attached to plaintiff's complaint and the ad damnum clause in that same complaint.

plaintiff in Texas. Also, on December 6, 2005, after defendant had placed six of its total nine orders, defendant completed—and submitted to plaintiff again in Texas—a form of credit application. Finally, on February 15, 2006, defendant issued two sequentially numbered checks, each in the amount of $2,450, made payable to plaintiff, and mailed those checks to Texas. Both checks were drawn on accounts that did not contain enough funds to cover the checks written; they were marked "non-sufficient funds," dishonored, and returned unpaid.

On March 31, 2006, plaintiff filed an action on an account against defendant in the District Court of Dallas County, Texas. *See, generally,* James H. Walzer, 3B *New Jersey Practice* § 19.1 at 282–84 (6th ed. 2006) (defining "action on account" and "action on account stated"). Although service of process was effected on defendant in New Jersey, defendant did not appear in the Texas court. Instead, on May 22, 2006, defendant's counsel wrote to the Clerk of the District Court of Dallas County, Texas, asserting that "[i]n light of the fact that [defendant] does not conduct business in the State of Texas and is not subject to the jurisdiction of the Texas Courts[,] it is respectfully requested that this case be dismissed for lack of jurisdiction." In defendant's view, "[i]f [plaintiff] wishes to sue this [d]efendant[,] the law suit must be brought within the State of New Jersey by attorneys licensed to practice within our State." Defendant never formally moved for the relief it requested by letter.

At plaintiff's request, on August 31, 2006, the Texas court entered a default judgment in plaintiff's favor and against defendant. It ruled that "[d]efendant, though duly, legally and regularly cited to appear and answer herein according to law, failed to appear herein and wholly made default."

On October 10, 2006, plaintiff moved in the Law Division for registration of its Texas judgment pursuant to the Uniform Enforcement of Foreign Judgments Act, *N.J.S.A.* 2A:49A–25 to –33. In its application, plaintiff represented that "[t]he time to appeal the foreign judgment has not expired and the court of origin has

not granted a stay of execution." *See N.J.S.A.* 2A:49A–28(a) (setting forth requirements of movant's affidavit). It also represented that "[t]he expiration under the rules of court of origin for moving to vacate the judgment is 30 days from entry of the judgment" and that "[n]o motion to vacate the judgment has been filed." It therefore sought entry of judgment in New Jersey in the amount of $26,062.35, which included the principal amount of the foreign judgment, plus awarded attorneys' fees and post-judgment interest. As required, the Clerk of the Superior Court issued a notice to defendant. *N.J.S.A.* 2A:49A–28(b).

Upon receipt of that notice, defendant moved in the Law Division for an order staying enforcement of the foreign judgment. *See N.J.S.A.* 2A:49A–29(b) (providing that, "[i]f the judgment debtor shows the Superior Court any ground upon which enforcement of a judgment of the Superior Court would be stayed, the Superior Court shall stay enforcement of the foreign judgment for an appropriate period, upon requiring the same security for satisfaction of the judgment which is required in this State"). In its certification in support of that application, defendant represented that it "does not and has not ever transacted business in the State of Texas." Instead, defendant accused plaintiff of "penetrat[ing] the State of New Jersey by supplying catalogs and other promotional materials designed to sell its products." Defendant conceded that "[i]t was solely from those catalogs and other printed materials that [defendant] ordered certain products from [p]laintiff to be shipped and billed to [defendant's] facility [in] Hackensack, New Jersey." In sum, defendant claimed it "had absolutely no presence in or minimal contacts with the [S]tate of Texas which would support any type of personal jurisdiction over [defendant] for the purposes of the lawsuit that was initiated in the State of Texas." According to defendant, "[t]he lawsuit should have been brought against [d]efendant within the State of New Jersey in a [forum] that would have personal jurisdiction over [defendant] due to the fact that [defendant]'s sole place of business is within the State of New Jersey."

The trial court denied defendant's motion to stay enforcement of the Texas judgment. It explained that "[t]he cause of action arose when the defendant here failed to pay for products that were purchased and—and the checks had to be remitted to the defendant because of insufficient funds." Focusing on the parallel requirements of *N.J.S.A.* 2A:49A–29(b) and *Rule* 2:9–5(a), the trial court concluded that defendant had failed to meet both prongs needed to stay enforcement of a foreign judgment, as "defendant here has failed to identify any ground upon which enforcement of the judgment should be stayed and it has not offered to provide security for satisfaction of the judgment[.]" It stated further that

defendant really doesn't satisfy the Court that there is any reason to stay enforcement of this judgment. It also cannot in this case argue it did not have notice of the Texas action because[,] as [it has] been pointed out in oral argument[,] obviously counsel wrote a letter objecting, but took no formal action on behalf of the client to contest the jurisdiction in Texas. And as a result the default was entered.

It concluded that "there is no basis upon which this judgment should be stayed." It explained that New Jersey courts are "compelled to give full faith and credit to the judgment of our sister state. And if the defendant in this case wished to contest jurisdiction[,] he should have done so in the Texas Court through Texas counsel." As the trial court succinctly noted, it is "too late now to have a second bite at the apple here in New Jersey."

In an unpublished opinion, the Appellate Division reversed and remanded the case for the entry of an order staying enforcement of the Texas judgment "due to the lack of valid personal jurisdiction of the Texas court over [defendant]." The panel explained that defendant's claim of lack of personal jurisdiction had been preserved, noting that " '[i]f a defendant does not appear when an action is brought against him and he thereby suffers a default judgment, he may in an action in another state question the validity of the judgment by asserting that the court in the first case did not have jurisdiction over him.' " (quoting *Hupp v. Accessory Distribs., Inc.,* 193 *N.J.Super.* 701, 708–09, 475 *A.*2d 679 (App.Div.1984)). It juxtaposed that circumstance with those where " 'a defendant challenges the jurisdiction of the court over

him and the court rejects his challenge and finds it has jurisdiction,'" noting that, in the latter instance, "'the issue may not be raised in a second state in an action to enforce the judgment rendered in the first state.'" (quoting *id.* at 709, 475 A.2d 679).

Concluding that "the jurisdictional issue was not adjudicated and rejected" in Texas, and that "[j]urisdiction simply appears to have been presumed[,]" the Appellate Division reasoned that "'a court of this State is obliged to recognize a foreign money judgment, unless the defendant demonstrates that the foreign jurisdiction lacked personal jurisdiction of defendant[.]'" (quoting *Arnold, White & Durkee, P.C. v. Gotcha Covered, Inc.*, 314 *N.J.Super.* 190, 201, 714 A.2d 360 (App.Div.1998)). It noted that "in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he [must] have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." (quoting *Int'l Shoe Co. v. Washington*, 326 *U.S.* 310, 316, 66 *S.Ct.* 154, 158, 90 *L.Ed.* 95, 102 (1945) (internal quotation marks omitted)). While explaining that "[i]ndividuals must have fair warning that their activities may subject them to the jurisdiction of a foreign sovereign[,]" the panel emphasized that "this fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities[.]" (quoting *Burger King Corp. v. Rudzewicz*, 471 *U.S.* 462, 472, 105 *S.Ct.* 2174, 2182, 85 *L. Ed.*2d 528, 540 (1985) (citations and internal quotation marks omitted)).

The Appellate Division defined the judicial role in this context as follows: "A court may exercise personal jurisdiction over a nonresident if two conditions are met: '(1) the long-arm statute creates personal jurisdiction over the defendant and (2) the exercise of personal jurisdiction is consistent with due process guarantees of the United States Constitution.'" (quoting *Revell v. Lidov*, 317 *F.*3d 467, 469 (5th Cir.2002)). Noting that a "court must engage in the requisite due process analysis to determine whether the minimum contacts have indeed been established such that the

maintenance of the suit does not offend traditional notions of fair play and substantial justice[,]" (citations and internal quotation marks omitted), the panel stated that "[t]he 'minimum contacts' requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." (citing *Lebel v. Everglades Marina, Inc.*, 115 *N.J.* 317, 323, 558 *A.*2d 1252 (1989)). In the alternative, the Appellate Division explained that, in order to trigger the exercise of long-arm jurisdiction, a "[d]efendant's conduct must be 'such that [it] should reasonably anticipate being haled into court' in the jurisdiction in question." (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 *U.S.* 286, 297, 100 *S.Ct.* 559, 567, 62 *L. Ed.*2d 490, 501 (1980)). It further asserted that " 'the existence of minimum contacts turns on the presence or absence of intentional acts of the defendant to avail itself of some benefit of a forum state. An intentional act calculated to create an actionable event in a forum state will give that state jurisdiction over the actor.' " (quoting *Waste Management, Inc. v. Admiral Insur. Co.*, 138 *N.J.* 106, 126, 649 *A.*2d 379 (1994)).

Applying those principles to the facts before it, the Appellate Division "recognized that the combined effect of several contacts with [a] state, no one of which is sufficient, might under some circumstances establish minimum contacts." (quoting *Bayway Refining Co. v. State Utilities, Inc.*, 333 *N.J.Super.* 420, 433, 755 *A.*2d 1204 (App.Div.2000) (internal quotation marks omitted)). However, because it deemed defendant a "passive buyer" of plaintiff's products, the panel concluded that there were insufficient minimum contacts with Texas to justify the exercise of its long-arm jurisdiction against defendant. It, therefore, reversed and remanded.

Plaintiff sought certification, presenting the question whether "a Texas court [may] assert jurisdiction over a defendant located in New Jersey" in the following limited circumstances: "where the defendant entered into a contract with a Texas resident with the expectation that the contractual duties would be performed in Texas, the contractual duties were in fact performed in Texas, and

the defendant's breach of the contract caused damages in Texas[.]" We granted that petition. 195 *N.J.* 518, 950 *A.*2d 905 (2008).

## II.

Plaintiff argues that the trial court correctly denied defendant's motion for a stay of execution of a foreign judgment. Focusing on the first of the two statutory requirements, plaintiff asserts that defendant did not demonstrate a ground upon which enforcement should be stayed. Addressing the substantive question of personal jurisdiction directly, plaintiff states that defendant had sufficient minimum contacts with Texas so as to allow the exercise of long-arm jurisdiction against it and that the Appellate Division's conclusion to the contrary was in error.[3]

Defendant's attack on the Texas judgment is two-fold. First, defendant claims that the Texas proceedings are subject to a due process challenge and, as a result, the Texas judgment is not entitled to full faith and credit. Second, defendant asserts that the Texas court failed to properly consider its jurisdictional objection and that, in any event, defendant did not have the minimum contacts necessary to warrant the exercise of long-arm jurisdiction.

## III.

### A.

One of the bedrocks of our federal system is that "Full Faith and Credit shall be given in each State to the public Acts,

---

[3] Plaintiff raises two additional points. First, plaintiff argues that defendant's application for a stay of execution could not be granted because no security was posted. Second, plaintiff also argues that, by its letter, defendant in fact did raise lack of personal jurisdiction in Texas and that, having done so, defendant is procedurally barred from raising the issue again in New Jersey; plaintiff abandoned that contention at oral argument. Because we conclude that the Texas court did have jurisdiction to entertain this case in the first instance, we need not address plaintiff's additional points.

Records, and judicial Proceedings of every other State." *U.S. Const.* art. IV, § 1. Of course, the judgment for which full faith and credit is sought must itself be valid, that is, it must be issued by a court of competent jurisdiction in possession of valid personal jurisdiction over the defendant. We have explained that the Full Faith and Credit Clause "applies only where the judgment of the foreign state is 'founded upon adequate jurisdiction of the parties and subject matter.'" *James v. Francesco,* 61 *N.J.* 480, 485, 295 *A.2d* 633 (1972) (quoting *Klaiber v. Frank,* 9 *N.J.* 1, 10, 86 *A.2d* 679 (1952); *Restatement 2d, Conflict of Laws,* §§ 104, 105 (1969)). Based on that premise, "[a] judgment is void if there has been a failure to comply with a requirement which is a condition precedent to the exercise of jurisdiction by the court" and "[a] judgment which is void is subject to collateral attack both in the state in which it is rendered and in other states." *Ibid.* (citations omitted).

 The principles that animate the Full Faith and Credit Clause also are informed by the constitutional bases on which a state can exercise its judicial power against a non-resident of that state. As *World–Wide Volkswagen Corp., supra,* 444 *U.S.* at 291, 100 *S.Ct.* at 564, 62 *L.Ed.*2d at 497, explains, "[t]he Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." That limitation is manifest:

A judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere. Due process requires that the defendant be given adequate notice of the suit, and be subject to the personal jurisdiction of the court. In the present case, it is not contended that notice was inadequate; the only question is whether [defendant was] subject to the jurisdiction of the [Texas] courts.

[A] state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist "minimum contacts" between the defendant and the forum State. The concept of minimum contacts, in turn, can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.

The protection against inconvenient litigation is typically described in terms of "reasonableness" or "fairness." We have said that the defendant's contacts with the forum State must be such that maintenance of the suit does not offend

traditional notions of fair play and substantial justice. The relationship between the defendant and the forum must be such that it is reasonable to require the corporation to defend the particular suit which is brought there. Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's power to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.

The limits imposed on state jurisdiction by the Due Process Clause, in its role as a guarantor against inconvenient litigation, have been substantially relaxed over the years.

[*Id.* at 291–92, 100 *S.Ct.* at 564–65, 62 *L.Ed.*2d at 497–98 (citations, internal quotation marks and editing marks omitted).]

Moreover, Texas—like New Jersey—has adopted a two-part standard to ensure that its exercise of personal jurisdiction over nonresident defendants complies with due process requirements, that is, that "[t]he nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state[,]" and, that "[t]he assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice[.]" *Schlobohm v. Schapiro,* 784 *S.W.*2d 355, 358 (Tex.1990) (internal quotation marks omitted). *Compare Scott v. Huey L. Cheramie, Inc.,* 833 *S.W.*2d 240, 241 (Tex.App.1992) ("A Texas court may exercise personal jurisdiction over a non-resident if the Texas long-arm statute authorizes the exercise of jurisdiction, and the exercise of jurisdiction is consistent with federal and state constitutional guarantees of due process."), *with Blakey v. Cont'l Airlines, Inc.,* 164 *N.J.* 38, 66, 751 *A.*2d 538 (2000) (holding that "the test for due process requires only that in order to subject a defendant to a judgment in personam, if he [or she] be not present within the territory of the forum, he [or she] have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Those unchanging commands of due process govern every foray into the realm of long-arm jurisdiction over non-residents." (citations and internal quotation marks omitted));

*Shah v. Shah*, 184 *N.J.* 125, 138, 875 *A.*2d 931 (2005) (same; quoting *Blakey, supra*).

Also, the Texas Legislature has codified portions of its long-arm jurisdiction jurisprudence. Thus, for purposes of determining whether a nonresident has engaged in sufficient minimum contacts with Texas, its Legislature has provided that, "[i]n addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident . . . contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state[.]" *Tex. Civ. Prac. & Rem. Code Ann.* § 17.042(1). *See also Schlobohm, supra*, 784 *S.W.*2d at 356–57 (stating that Texas's "statute authorizes the exercise of jurisdiction over those who do business in Texas. The statute lists particular acts that constitute 'doing business.' The statute provides, however, that 'other acts' of the nonresident may place him within the 'doing business' requirement." (citations omitted)); *Scott, supra*, 833 *S.W.*2d at 241 ("The Texas long-arm statute lists particular acts that automatically qualify as 'doing business' in Texas. 'Other acts' may also constitute 'doing business' according to the statute.").

With those core principles to guide us, we turn to their application to the facts in this case. That is, we address first whether defendant had sufficient minimum contacts with Texas. If that is so, we then must focus on whether Texas's exercise of jurisdiction over defendant in this setting offends traditional notions of fair play and substantial justice.

## B.

 In applying the "minimum contacts" test, we focus on the relationship among the defendant, the forum, and the litigation. The "minimum contacts" requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff.

This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. The question is whether the defendant's conduct and connection with the

forum State are such that he should reasonably anticipate being haled into court there.

[*Lebel v. Everglades Marina, Inc.*, 115 *N.J.* 317, 323–24, 558 *A.2d* 1252 (1989) (citations and internal quotation marks omitted).]

 In today's rapidly shrinking world, the purchase of goods from out-of-state vendors has become commonplace. Those instances, standing alone, are insufficient to establish the requisite minimum contacts needed to invoke long-arm jurisdiction consistent with due process. However, unlike the casual or occasional purchaser of out-of-state products, defendant's minimum contacts with Texas are many and varied. The record discloses that defendant entered into what was intended to be a long-term commercial relationship with plaintiff; placed nine separate orders with plaintiff in Texas; sent a credit application to plaintiff in Texas; and sent two checks—both of which were later dishonored—to plaintiff in Texas as purported payment for the products defendant purchased from plaintiff. Against that factual backdrop, and because plaintiff's cause of action arises from "contacts result[ing] from the defendant's purposeful conduct and not the unilateral activities of the plaintiff[,]" *id.* at 323, 558 *A.2d* 1252, we have no hesitation in concluding that, in those specific circumstances, plaintiff has established that defendant had sufficient minimum contacts to justify the exercise of personal jurisdiction by the Texas court. We therefore turn to whether Texas's exercise of personal jurisdiction over defendant offends traditional notions of fair play and substantial justice.

## C.

 "[O]nce it is established that defendant's activities relating to the action established minimum contacts with the forum state, the 'fair play and substantial justice' inquiry must still be made." *Id.* at 328, 558 *A.2d* 1252. The burden here, however, shifts, for it is the "nonresident defendant who has been found to have minimum contacts with the forum [who] 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Ibid.* (quoting *Burger*

*King Corp. v. Rudzewicz,* 471 *U.S.* 462, 477, 105 *S.Ct.* 2174, 2184, 85 *L.Ed.*2d 528, 544 (1985)). We have made clear that "[t]his determination requires evaluation of such factors as the burden on the defendant, the interests of the forum State, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Ibid.* (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court,* 480 *U.S.* 102, 113, 107 *S.Ct.* 1026, 1034, 94 *L.Ed.*2d 92, 105 (1987) (internal quotation and editing marks omitted)).

Our review of this record convinces us that neither traditional notions of fair play nor of substantial justice would be offended by subjecting defendant to the jurisdiction of Texas's courts. No doubt, defendant had little difficulty reaching out—on a repeated basis over a significant period of time—to a Texas resident when defendant thought it to be to its own economic advantage. Defendant burnished that relationship when it transmitted to plaintiff in Texas a credit application, supplying further proof of defendant's willingness to continue to transact business in Texas. Finally, and most telling, defendant issued two checks with insufficient funds to a Texas resident. In the aggregate of those circumstances presented, we therefore conclude that subjecting defendant to the jurisdiction of Texas's courts does not offend traditional notions of fair play and substantial justice.

## IV.

The judgment of the Appellate Division is reversed and the judgment of the Law Division denying defendant's motion to stay execution on a foreign judgment is reinstated.

*For reversal and reinstatement*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.