**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0398-17T4

GALE FONTANILLA,

    Plaintiff-Appellant,

v.

JEROME Q. FERNANDEZ and
GERALDINE M. FERNANDEZ,

    Defendants-Respondents.

_____

        Submitted September 21, 2018 – Decided  February 13, 2019

        Before Judges Simonelli and DeAlmeida.

        On appeal from Superior Court of New Jersey, Law Division, Passaic County, Docket No. DJ-167560-16.

        Hegge & Confusione, LLC, attorneys for appellant (Michael J. Confusione, of counsel and on the brief).

        Jerome Q. Fernandez and Geraldine M. Fernandez, respondents pro se.

PER CURIAM

Plaintiff Gale Fontanilla appeals from the August 18, 2017 order of the Law Division vacating a domesticated California default judgment against defendants Jerome Q. Fernandez (Jerome) and Geraldine M. Fernandez (Geraldine[1]).  We affirm.

I.

The following facts are derived from the record.  In 1999, Fontanilla was a resident of the Philippines, where she owns a multi-unit residential property.  Defendants were tenants at Fontanilla's property.

In 2000, Fontanilla moved to California.  Two years later, she engaged defendants to perform tasks related to her Philippines property.  Defendants were authorized to collect rent from other tenants, deposit the rents in Fontanilla's bank account, make repairs, and pay taxes as they came due.

In March 2006, Jerome moved from the Philippines to New Jersey, where he established residency.  Geraldine remained in the Philippines.  Sometime around January 2012, Geraldine contacted Fontanilla in California requesting money to pay for repairs at the property.  From January 17, 2012 through August 21, 2012, Fontanilla sent Geraldine fifteen payments totaling $5450, incurring

---

[1]  We refer to defendants by their first names because they share a last name. We intend no disrespect.

A-0398-17T4

$189.80 in transfer fees. Fontanilla later became convinced that Geraldine had misappropriated the $5450 for her personal use and that both defendants had stolen $71,250.54 in rents collected on Fontanilla's property.

Fontanilla contends that in October 2012, Jerome contacted her in California and admitted that he and Geraldine owed her $76,890.34 ($5,639.80 for the misappropriated transfers and transfer fees, and $71,250.54 for misappropriated rent). According to Fontanilla, defendants agreed to pay her $200 in November 2012, and $300 each month thereafter until the debt was paid.

On November 10, 2012, a community hearing was held in the Philippines to address Fontanilla's contentions. Geraldine attended in person, and Fontanilla attended through Skype. At the hearing, Geraldine signed what Fontanilla described as a promissory note, written in Tagalog, acknowledging both her debt to Fontanilla and the payment plan. The document was scanned and emailed to Fontanilla. Following the hearing, Geraldine moved to New Jersey to join Jerome. Defendants sent payments in accordance with the agreement to Fontanilla in California from November 2012 to May 2013, when two of their checks were rejected for insufficient funds.

Fontanilla filed suit against defendants in a California court to recover the amounts she alleges they owe her. Defendants acknowledge that they were

A-0398-17T4

served with Fontanilla's complaint. On June 14, 2016, Fontanilla obtained a default judgment in the California action against defendants for $95,937.18.

On September 15, 2016, Fontanilla domesticated the California judgment by filing it with the Clerk of the Superior Court. See N.J.S.A. 2A:49A-27. On October 14, 2016, Jerome filed a motion to vacate the judgment, alleging a lack of personal jurisdiction over him in California. On October 17, 2016, Fontanilla filed a notice of application for wage execution against both defendants.

On February 10, 2017, the trial court held a hearing. Fontanilla and Jerome testified. Geraldine was not named in Jerome's motion and did not testify. Jerome testified that he and Geraldine had never been to California. While he admitted both defendants communicated with Fontanilla while she was in California, he disputed Fontanilla's contention that defendants initiated those communications. Jerome did not deny that defendants sent several payments to Fontanilla in California or that Fontanilla wired money to Geraldine from California.

On August 18, 2017, Judge Randal C. Chiocca issued an order granting Jerome's motion to vacate the judgment, and denying Fontanilla's application for wage executions. The order was accompanied by Judge Chiocca's comprehensive written opinion. The judge began his analysis by acknowledging

4

that the obligation of our courts to recognize a domesticated foreign money judgment does not apply where a defendant demonstrates that the foreign jurisdiction lacked personal jurisdiction over him or her. Judge Chiocca analyzed the California long-arm statute, Cal. Civ. Proc. Code § 410.10, a California Supreme Court opinion interpreting that provision, <u>Vons Cos., Inc. v. Seabest Foods, Inc.</u>, 926 P.2d 1085, 1091 (Cal. 1996), and the controlling United States Supreme Court precedent, <u>Int'l Shoe Co. v. Washington, Office of Unemployment Comp. & Placement</u>, 326 U.S. 310, 316 (1945) and <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 474-75 (1985).

Judge Chiocca concluded that California lacked general jurisdiction over defendants, given that the record was "woefully insufficient to demonstrate that defendants' contacts with California were 'substantial . . . continuous and systematic.'" In addition, Judge Chiocca concluded that defendants' contacts with California were insufficient to establish specific jurisdiction because the crux of Fontanilla's claims against defendants related to their alleged misappropriation of rent in the Philippines. In addition, the judge concluded that the "record is devoid of any evidence that defendants purposely availed themselves of the benefits" of California, and instead establishes that their interactions with Fontanilla in that state were related to the fulfillment of their

obligations in the Philippines. The judge concluded that the exercise of personal jurisdiction over defendants in California would not comport with fair play and substantial justice, as "there is little or nothing concerning the underlying affairs between the parties which have any material relationship to the State of California." Although Geraldine did not join Jerome's motion, the court sua sponte vacated the judgment against Geraldine in the interests of justice.

This appeal followed. Fontanilla argues that Judge Chiocca erred in his analysis, and that defendants' contacts with her while she was a resident of California were sufficient to establish specific jurisdiction. Fontanilla also argues that the judge erred in vacating the judgment against Geraldine because she did not join the motion to vacate.

## II.

"The question whether a court has personal jurisdiction over a defendant is a question of law, and thus our review of the issue is de novo." YA Glob. Invs., L.P. v. Cliff, 419 N.J. Super. 1, 8 (App. Div. 2011). Factual "[f]indings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence." Rova Farms Resort Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1984).

6

"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. It is undisputed that Fontanilla complied with the statutory procedures to domesticate the California judgment in our State. See N.J.S.A. 2A:49A-27. In addition, Fontanilla acknowledges the long-established precedent that

> the judgment for which full faith and credit is sought must itself be valid, that is, it must be issued by a court of competent jurisdiction in possession of valid personal jurisdiction over the defendant. We have explained that the Full Faith and Credit Clause "applies only where the judgment of the foreign state is 'founded upon adequate jurisdiction of the parties and subject matter.'"
>
> [McKesson Corp. v. Hackensack Med. Imaging, 197 N.J. 262, 275 (2009) (quoting James v. Francesco, 61 N.J. 480, 485 (1972)).]

Thus, where "a defendant does not appear when an action is brought against him and he thereby suffers a default judgment, he may in an action in another state question the validity of the judgment state by asserting that the court in the first case did not have jurisdiction over him." Hupp v. Accessory Distribs., Inc., 193 N.J. Super. 701, 708-09 (App. Div. 1984) (footnote omitted). This review is done according to the foreign state's long-arm statute and constitutional principles. See generally Freedom Fin. Co., Inc. v. Berry, 119 N.J. Super. 91 (App. Div. 1972).

A-0398-17T4

California law vests jurisdiction in its courts to the extent permitted by the United States Constitution. See Vons, 926 P.2d at 1091. There are two types of personal jurisdiction recognized under the Constitution: "general" and "specific." See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). Because Fontanilla concedes that California does not have general jurisdiction over defendants, we are concerned only with whether specific jurisdiction exists.

"'Minimum contacts' are the threshold requirements for specific personal jurisdiction." Waste Mgmt., Inc. v. Admiral Ins. Co., 138 N.J. 106, 119 (1994). "The primary focus of our personal jurisdiction inquiry is the defendant's relationship to the forum State." Bristol-Myers Squibb Co. v. Superior Court, 137 S. Ct. 1773, 1779 (2017). "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear, 564 U.S. at 919 (quotation omitted).

Minimum forum contacts may be satisfied by a non-resident who has: "purposefully directed" activities at forum residents; "'purposefully derive[d] benefit' from forum activities"; or where defendant "purposefully avail[ed] himself or herself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Vons, 926 P.2d at

8

1092 (alteration in original) (quoting Burger King Corp., 471 U.S. at 472-73, 475). A third party cannot unilaterally draw a party into a connection with the state. See Vons, 926 P.2d at 1096. "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." Bristol-Myers, 137 S. Ct. at 1781 (quoting Goodyear, 564 U.S. at 919). "What is needed . . . is a connection between the forum and the specific claims at issue." Bristol-Meyers, 137 S. Ct. at 1781.

Having carefully reviewed Fontanilla's arguments in light of the record and applicable legal principles, we affirm the August 18, 2017 order of the Law Division substantially for the reasons stated by Judge Chiocca in his thorough and well-reasoned written opinion. We add the following comments.

We agree with Judge Chiocca's conclusion that Fontanilla's claims against defendants primarily relate to their alleged misappropriation of rents collected in the Philippines, and on property located in the Philippines, arising from their authority to act on Fontanilla's behalf in the Philippines. Although defendants engaged in communications with Fontanilla while she was a resident of California and remitted a few payments on their acknowledged debt to her in

9

California, we agree with the trial court that those contacts were insufficient to establish specific jurisdiction over defendants.

In addition, we find no fault with the trial court's decision to vacate the judgment against Geraldine. The testimony of both witnesses touched on Geraldine's contacts with California and her interactions with Fontanilla. There was, therefore, an adequate evidentiary basis for the trial court's decision. In addition, we have long recognized that a court may sua sponte question its own jurisdiction. See Baldwin Enters., Inc. v. Town of Warwick, 226 N.J. Super. 549, 551-52 (App. Div. 1988). We see no reason why the trial court should be precluded from raising the question of whether a foreign court had jurisdiction to enter a domesticated judgment when one defendant subject to the judgment has compiled an evidentiary record sufficient to make that determination with respect to another defendant subject to the judgment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0398-17T4