169 N.J. Super. 338 (1979)
404 A.2d 1211
DeGROOT, KALLIEL, TRAINT & CONKLIN, P.C., A CORPORATION OF THE STATE OF MICHIGAN, PLAINTIFF-RESPONDENT,
v.
NICHOLAS CAMAROTA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 11, 1978.
Remanded December 29, 1978.
Filed March 6, 1979.
Supplemental Memoranda March 5 and 23, 1979.
Decided July 3, 1979.
*340 Before Judges ALLCORN, SEIDMAN and BOTTER.
Messrs. Morgan, Melhuish, Monaghan and Spielvogel, attorneys for appellant (Mr. Henry G. Morgan, of counsel; Mr. Martin B. Wallerstein, on the supplemental letter memorandum).
Messrs. Novins, Farley, Grossman, Liston & York, attorneys for respondent (Mr. Richard A. Grossman, of counsel; Ms. Paula K. Pennypacker, on the supplemental letter memorandum).
The opinion of the court was delivered by SEIDMAN, J.A.D.
In this matter, involving a lawsuit instituted in this State by a firm of Michigan attorneys to recover on a default judgment obtained against defendant for professional services rendered in Michigan, and a counterclaim filed by defendant alleging legal malpractice in connection with those services, defendant appealed from a summary judgment dismissing the counterclaim entered on a holding by the trial judge that the counterclaim was barred by the Michigan statute of limitations. Defendant then moved for relief under R. 4:50 on the ground that the counterclaim was in the nature of a "recoupment" action not barred by the Michigan statute. The motion was denied and this appeal followed.
Since the summary judgment disposed only of the counterclaim, the appeal was interlocutory. However, we granted the necessary leave to appeal nunc pro tunc, and we solicited letter memoranda from counsel on whether, assuming the counterclaim was governed by the New Jersey six-year statute of limitations instead of Michigan's two-year statute, plaintiff's judgment would nevertheless be res judicata of the cause of action set up in the counterclaim. Defendant's *341 response raised the issue, among other things, that the Michigan judgment was a nullity for lack of in personam jurisdiction over him, in that service upon him had not been made in accordance with the "long-arm service" order of the Michigan court.
It is our view that the jurisdictional attack on the Michigan judgment would have to be resolved preliminarily by the trial court and a determination made whether full faith and credit would be given to that judgment. Accordingly, in an unreported opinion filed December 29, 1978, we remanded the matter to the trial court for a hearing on that issue, to be followed by findings of fact and conclusions of law pursuant to R. 1:7-4. We retained jurisdiction. Such hearing was held, the trial judge concluded that in personam jurisdiction was obtained, and final judgment was entered in favor of plaintiff in the amount of $4,141.64 together with interest and costs. The appeal as originally filed will be deemed to include this judgment.
Defendant maintains in a supplemental letter memorandum that since the Michigan order provided for service upon the defendant "by certified mail, deliver to addressee only," and defendant did not personally receive the mail or sign for the summons and complaint, the order of the court was not followed, and, therefore, service was not effected. The trial judge rejected the same argument below. We agree with his determination essentially for the reasons expressed by him in his comprehensive oral opinion rendered at the close of the hearing.
The parties stipulated the following facts at the hearing: The summons and complaint were sent by certified mail addressed to defendant at a postoffice box number in Toms River. The box number was in the name of International Bancorp. [of which defendant was a principal]. A postal clerk placed defendant's address on the envelope, which ultimately was delivered to defendant's residence. The return receipt was signed by defendant's wife, who placed the envelope on defendant's desk in their home. Defendant *342 referred the summons and complaint to an attorney in this State, who wrote to plaintiff acknowledging that service had been effected upon his client in New Jersey and requesting a short extension of time for the filing of answer by Michigan counsel to be retained for that purpose. No answer was filed and defendant first became aware of the default judgment when the present suit was instituted.
We are completely satisfied that since defendant concededly received the summons and complaint, was aware of the nature of the lawsuit and, in fact, turned it over to an attorney, service was made upon him in a manner that satisfied the requirements of due process. The trial judge correctly held that the Michigan court had therefore obtained in personam jurisdiction over defendant and that the judgment obtained thereafter was entitled to full faith and credit. O'Connor v. Abraham Altus, 67 N.J. 106, 128 (1975).
We now address the issue of whether defendant may maintain his counterclaim notwithstanding the entry of the default judgment. To resolve that issue, we need not determine whether the trial judge correctly applied the shorter Michigan period of limitations in barring the counterclaim, because in our view, even if the counterclaim was timely under our statute, defendant is still precluded from asserting it at this time.
Stated concisely, the underlying facts are that in 1974 the New Jersey corporation of which defendant was a principal sought to acquire a controlling interest in a Michigan railway company. Defendant engaged plaintiff law firm to perform legal services in connection with the attempted acquisition. After the failure of the effort, plaintiff sued defendant in Michigan for its unpaid services and obtained the default judgment on which the present lawsuit was predicated.
The legal malpractice counterclaim was based upon an allegation that plaintiff gave improper advice regarding proxies to be used to acquire the stock of the railway company. According to the counterclaim, the proxies were declared by *343 a federal court in Michigan to be improper solicitation of stockholders, thereby subjecting defendant to possible "criminal and civil sanctions in his capacity as an officer of International Bank Corp.," and allegedly causing the loss of the controlling interest. Damages were demanded, including the return of legal fees paid to plaintiff. These allegations were denied in plaintiff's answer.
The judgment sued upon here, being entitled to full faith and credit as mandated by the United States Constitution, U.S.C.A. Const. Art. 4, § 1, should be given at least the res judicata effect to which the judgment would be entitled in the state of rendition. Durfee v. Duke, 375 U.S. 106, 110, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963). The collateral estoppel aspect of res judicata is similarly embraced by the protective cloak of full faith and credit. United States v. Silliman, 167 F.2d 607, 621 (3 Cir.1948), cert. den. 335 U.S. 825, 69 S.Ct. 48, 93 L.Ed. 379 (1948). In short, a litigation once pursued to judgment in a sister state is conclusive of the rights of the parties in every other court as in the court where the judgment was entered. Klaiber v. Frank, 9 N.J. 1, 10 (1952). And this is so even if the judgment is obtained by default. See Riehle v. Margolies, 279 U.S. 218, 225, 49 S.Ct. 310, 73 L.Ed. 669 (1928).
Michigan law is consistent with the foregoing. In Braxton v. Litchalk, 55 Mich. App. 708, 223 N.W.2d 316, 319 (Ct. App. 1974), the court held that a default judgment was just as conclusive an adjudication and as binding upon the parties of whatever was essential to support the judgment as one which has been rendered following answer and contest. See also, Sahn v. Brisson's Estate, 43 Mich. App. 666, 204 N.W.2d 692 (Ct. App. 1973). The test is not whether the prior case had been formally tried as distinguished from a judgment taken by default, but whether the question of fact was actually litigated and determined in the prior suit, and where a court grants a default judgment upon the proof before it the issues presented by the complaint are thereby *344 actually litigated. Braxton v. Litchalk, supra 223 N.W.2d at 320.
We are satisfied that the maintenance of the counterclaim herein would depend upon facts or evidence which were essential to the default judgment. That judgment necessarily constituted a determination that plaintiff rendered legal services for which it was entitled to be compensated, and that the amount awarded was fair and reasonable compensation for these services. Cf. White v. Mindes, 105 N.J.L. 298 (Sup. Ct. 1929), aff'd 106 N.J.L. 606 (E. & A. 1930), in which the court held that when a physician obtained a judgment in New York against a patient for the amount of his fee and then brought suit on that judgment in New Jersey, the defendant could not counterclaim for alleged malpractice. The rationale was that the judgment was res judicata since the cause of action set forth in the counterclaim could have been asserted in the New York suit to defeat recovery in toto or pro tanto, or to seek damages in excess of plaintiff's claim.
A question exists as to whether the counterclaim here may nevertheless be interposed in light of the permissive counterclaim provisions of R. 4:7-1 (formerly R.R. 3:13-1). In Elliott-Lewis Corp. v. Graeff, 11 N.J. Super. 567 (Law Div. 1951), plaintiff sought to dismiss the counterclaim to its suit on a foreign judgment, citing White v. Mindes. The court denied the motion, holding that regardless of what the rule was previously, R.R. 3:13-1 permitted a counterclaim "in an action on a foreign judgment where the defendant was not obliged to set up the counterclaim in the foreign action." 11 N.J. Super. at 569 (emphasis supplied). Cf. Fox v. Fox, 526 S.W.2d 180 (Tex. Civ. App. 1975), in which our rule was applied so as to bar a counterclaim, mandatory here, from being asserted in a Texas action on a New Jersey judgment.
Rule 203 of the Michigan courts, captioned "Joinder of Claims, Counterclaims, and Cross-Claims" (GCR 1963, 203), requires litigants to assert against each other all claims arising out of the same transaction. In the Committee Notes appended to the rule, the comments are that the "language *345 of Federal Rule 13(a) with regard to compulsory counterclaims has been employed for this purpose," and that "[t]his is a broad rule of required joinder and it is predicated on the theory of requiring the parties to settle all matters arising out of the transaction or occurrence in one lawsuit." In Sahn v. Brisson's Estate, supra, a repairman sued the owner of a bulldozer for storage fees and costs of repairs. The court granted defendant's motion for accelerated judgment and dismissed the action, holding that it was barred by a prior lawsuit instituted by the owner against the repairman for conversion of the bulldozer, in which default judgment had been entered in favor of the owner. The court said that the issue presented was the application of the doctrine of collateral estoppel, and while a defendant generally has the election under GCR 1963, 203.2, of either pleading a counterclaim or reserving it for a future independent suit, the failure to assert a counterclaim stemming from the same issues or subject matter in a prior suit will estop a defendant from afterward maintaining a separate action on that counterclaim against the plaintiff in the prior suit. 204 N.W.2d at 694-695. It is to be noted that the court thus gave collateral estoppel effect to a prior default judgment in a subsequent suit between the parties arising out of the same transaction or occurrence.
The rationale of Sahn v. Brisson's Estate, is pertinent here. The subject matter of the counterclaim, namely, plaintiff's alleged legal malpractice, clearly originated in the same transaction that gave rise to the Michigan lawsuit. Defendant was required by the compulsory joinder rule of that state to assert either by way of answer or counterclaim his claims based upon plaintiff's alleged malpractice. Not having done so, and having allowed default judgment to be entered against him, he is now precluded from asserting the counterclaim.
The judgment is affirmed.