279 N.J. Super. 419 (1995)
652 A.2d 1261
SECURITY BENEFIT LIFE INSURANCE COMPANY, PLAINTIFF-RESPONDENT,
v.
TFS INSURANCE AGENCY, INC. AND TOMORROW'S FINANCIAL SERVICES, INC., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 10, 1995.
Decided February 14, 1995.
*421 Before Judges MICHELS, KEEFE and HUMPHREYS.
Iaria & MacNiven, attorneys for appellants (Robert J. MacNiven, of counsel and on the brief).
Kathleen R. Wall, attorney for respondent.
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendants TFS Insurance Agency, Inc. (TFS) and Tomorrow's Financial Services, Inc. (Tomorrow's Financial) appeal from a summary judgment of the Law Division that (1) awarded plaintiff Security Benefit Life Insurance Company damages in the amount of $38,931.50 on a default judgment obtained by plaintiff against them in Kansas and (2) dismissed their counterclaim.
Briefly, TFS and Tomorrow's Financial are New Jersey corporations and have their principal places of business in New Jersey. Tomorrow's Financial is the holding company and TFS is a subsidiary of that company. TFS is in the business of accepting and processing life insurance for a large sales force consisting of independent representatives who are not employees of either of the defendant corporations. The representatives also sell various other financial products, including securities, property casualty insurance, mortgages and financial advising. Plaintiff is an insurance company incorporated in Kansas, with its principal place of business in Kansas.
In 1990, TFS, with Tomorrow's Financial as guarantor, entered into various agreements with plaintiff, to process insurance for *422 TFS representatives. Defendants claimed that plaintiff refused and was unwilling to process significant portions of the business that was being submitted to it. On April 1, 1992, Thomas P. Hyland, Vice President and Charles C. Tomaro, Chief Executive Officer of TFS, wrote to Howard Fricke, President and Chief Executive Officer of plaintiff, as well as all the members of plaintiff's Board of Directors, explaining their position, seeking to discuss any matters in dispute in order to resolve them.
On April 24, 1992, plaintiff instituted suit against defendants in the District Court of Shawnee County in Kansas to recover monies allegedly due under their contracts. Plaintiff obtained an order in Kansas, by which a special process server was appointed to serve the complaint on defendants in New Jersey. Defendants did not answer or otherwise move with respect to this suit. Rather, on June 12, 1992, defendants instituted an action in the Law Division of the Superior Court of New Jersey, alleging unlawful and unreasonable interference with their prospective economic advantage, failure to process the business forwarded by their business representatives, ineffective processing, breach of contract and loss of advanced commissions structure and investment of their monies. Plaintiff entered an appearance in the Law Division and then removed the matter from the Law Division to the United States District Court for the District of New Jersey.
On June 18, 1992, a default judgment was entered in the Kansas action against both defendants in the sum of $35,081.07, together with interest at the rate of $9.11 each day after June 18, 1992, until the court signed the order. Defendants then moved in Kansas to vacate the default judgment. While the motion was pending in Kansas, the Federal District Court action in New Jersey was administratively dismissed without prejudice with the consent of both parties. Subsequently, the Kansas court found that the service upon defendants was proper and that defendants' failure to answer the Kansas action "was not due to inadvertence" or "to neglect," but rather "was intentional based upon strategy of New Jersey counsel designed to serve the clients." The Kansas court, thereupon denied defendants' motion to set aside the default judgment.
*423 Plaintiff then instituted this action in the Law Division to enforce the Kansas judgment against defendants. Defendants denied liability and filed a counterclaim against plaintiff, setting forth the same claims that were asserted in their original action, removed to the Federal District Court and subsequently dismissed without prejudice. Plaintiff's motions for summary judgment to enforce the Kansas judgment and to dismiss defendants' counterclaim were granted, and judgment was entered in favor of plaintiff against defendants in the sum of $38,931.50. This appeal followed.
Defendants seek a reversal of the summary judgment and a remand for a trial. They contend that the trial court erred in enforcing the Kansas judgment and in dismissing their counterclaim. We disagree and affirm.
The United States Constitution provides that "Full Faith and Credit shall be given in each state to the public Acts Records, and Judicial Proceedings of every other state." U.S. Const. art. IV, § 1. The full faith and credit required to be given judgments does not depend on the Constitution alone. Congress also enacted 28 U.S.C.A. § 1738, which provides in part: "[J]udicial proceedings ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such state ... from which they are taken."
[City of Philadelphia v. Bauer, 97 N.J. 372, 376-77, 478 A.2d 773 (1984)].
In general, the Full Faith and Credit Clause:
requires every state to give at least the res judicata effect which the judgment would be accorded in the state which rendered it. Durfee v. Duke, 375 U.S. 106, 109, 84 S.Ct. 242 [244], 11 L.Ed.2d 186 (1963). However, it is a well established constitutional principle that a judgment entered without due process of law is not entitled to full faith and credit and may not be enforced even as a matter of comity. Griffin v. Griffin, 327 U.S. 220, 228-229, 66 S.Ct. 556, [560-561], 90 L.Ed. 635 (1946); See also, Restatement, Conflicts 2d, § 104 at 315 (1969). Thus, a court of this State, when asked to enforce a foreign state judgment, must deny full faith and credit if the rendering court lacked in personam jurisdiction, Durfee v. Duke, supra, 375 U.S. at 106, 84 S.Ct. 242, 11 L.Ed.2d 186; subject matter jurisdiction, James v. Francesco, 61 N.J. 480, 485 [295 A.2d 633] (1972); Klaiber v. Frank, 9 N.J. 1 [86 A.2d 679] (1952), or failed to provide adequate notice and an opportunity to be heard. National Exchange Bank v. Wiley, 195 U.S. 257, 25 S.Ct. 70, 49 L.Ed. 184 (1904); Griffin v. Griffin, supra.

[City of Philadelphia v. Stadler, 164 N.J. Super. 281, 286, 395 A.2d 1300 (Cty.Ct. 1978), aff'd, o.b. 173 N.J. Super. 235, 413 A.2d 996, certif. denied, 85 N.J. 465, 427 A.2d 563 (1980), cert. denied, 450 U.S. 997, 101 S.Ct. 1702, 68 L.Ed.2d 198 (1981)].
*424 "A judgment properly entered in accordance with local procedure is entitled to full faith and credit in any other state provided that the judgment is not entered in violation of due process of law." Hupp v. Accessory Distributors, Inc., 193 N.J. Super. 701, 708, 475 A.2d 679 (App.Div. 1984). In DeGroot v. Camarota, 169 N.J. Super. 338, 343, 404 A.2d 1211 (App.Div. 1979), we stated:
... a litigation once pursued to judgment in a sister state is conclusive of the rights of the parties in every other court as in the court where the judgment was entered. Klaiber v. Frank, 9 N.J. 1, 10, 86 A.2d 679 (1952). And this is so even if the judgment is obtained by default.
The circumstances in DeGroot are similar to the facts here. In DeGroot, plaintiff Michigan attorneys sued a New Jersey client of theirs in New Jersey, to recover on a default judgment which had been obtained in Michigan. The defendant client counterclaimed in New Jersey for legal malpractice in connection with those services. The trial court dismissed the counterclaim and the defendant appealed. On appeal, we affirmed and precluded the counterclaim, finding that defendant was required to assert his counterclaim in the Michigan action under Rule 203 of the Michigan courts, which requires litigants to assert against each other all claims arising out of the same transaction. See Id. 169 N.J. Super. at 344, 404 A.2d 1211. The rationale was that the judgment was res judicata since the cause of action set forth in the counterclaim could have been asserted in Michigan. See Id.
Here, defendants, like the defendant in DeGroot, were required to bring their counterclaim in the Kansas action. The applicable Kansas rules of civil procedure, in part, provide:
A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against an opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim ... [Kan. Civ. Proc. Code Ann. sec. 60-213].
The factual circumstances giving rise to defendants' counterclaim in the action are the same which precipitated plaintiff's original complaint filed against defendants in the Kansas action. Since defendants failed to assert their counterclaim in Kansas and since the facts of their counterclaim arose out of the same *425 circumstances giving rise to plaintiff's complaint against them in Kansas, defendants are precluded from now asserting the counterclaim in the New Jersey action. The Kansas judgment, which is entitled to full faith and credit in New Jersey, is res judicata as to all claims that were or could have been asserted by defendants in the Kansas action. Defendants were required by Kansas' compulsory joinder rule to assert their claims either by way of answer or counterclaim. Not having done so, and having allowed a default judgment to be entered against them, defendants are now precluded from asserting their counterclaim in New Jersey. See DeGroot, supra, 169 N.J. Super. at 345, 404 A.2d 1211.
We are also convinced, contrary to defendants' claims, that the service of process upon defendants satisfied due process and, therefore, the Kansas court had jurisdiction to enter a default judgment against defendants. First, defendants admitted in their Kansas motion to set aside the default judgment, that plaintiff's petition and requests for admission in the Kansas action were personally served upon Joanne Przybylko, the registered agent for both of them. Second, defendants' attorney acknowledged he had notice of the pendency of the Kansas proceeding as early as May 1992, several weeks before the default was entered. Finally, and equally important, the service of process afforded defendants was in accordance with local procedures and was based on sufficient contacts by defendants with the forum state. See Kan. Stat. Ann. § 60-204 (providing that "[i]n any method of serving process, substantial compliance therewith shall effect valid service of process if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or proceeding was pending...."); Kan. Stat. Ann. § 60-308(a)(2) (providing that "service of process shall be made (A) in the same manner as service within this state, by any officer authorized to make service of process in this state or in the state where defendant is served...."); Kan. Stat. Ann. § 60-304 (providing that with regards to serving a corporation, the rule is satisfied "(1) by serving an officer, partner or a resident, managing or general *426 agent, or (2) by leaving a copy of the summons and petition at any business office of the defendant ..."). But see Hall v. Quivira Square Development Co., Inc., 9 Kan. App.2d 243, 675 P.2d 931 (1984). Taken together the facts and law establish that defendants had notice reasonably calculated to inform them of plaintiff's Kansas suit. Hilton Intern. Co. v. Ginsburg, 207 N.J. Super. 1, 503 A.2d 879 (App.Div. 1985). See also Rosa v. Araujo, 260 N.J. Super. 458, 462, 616 A.2d 1328 (App.Div. 1992), certif. denied, 133 N.J. 434, 627 A.2d 1140 (1993).
Moreover, defendants waived their right to object to the sufficiency of the service of process when they appeared in Kansas to set aside the default judgment without objecting to personal jurisdiction. A defendant who appears in an original action without objection to personal jurisdiction may not collaterally attack the judgment entered in that original action. Mrowczynski v. Mrowczynski, 142 N.J. Super. 312, 318, 361 A.2d 554 (App.Div. 1976). Cf. Baldwin v. Iowa State Travelers Men's Ass'n, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931). Thus, when defendants appeared in Kansas to set aside its default without objecting to jurisdiction, they waived their right to object to the jurisdiction of the Kansas court in this action.
Since defendants failed to answer or otherwise move with respect to the suit instituted against them in Kansas, and since it does not appear that defendants' failure to do so was because of excusable neglect, defendants are barred from litigating in the New Jersey action any of the issues that were, could or should have been litigated in the Kansas action. See Resolution Trust Corp. v. Associated Gulf Contractors, Inc., 263 N.J. Super. 332, 341, 622 A.2d 1324 (App.Div.), certif. denied, 134 N.J. 480, 634 A.2d 527 (1993). Consequently, the default judgment obtained by plaintiff in Kansas is entitled to full faith and credit in New Jersey. Mori v. Hartz Mountain Development Corp., 193 N.J. Super. 47, 472 A.2d 150 (App.Div. 1983); DeGroot, supra, 169 N.J. Super. at 383, 404 A.2d 1211.
*427 Although we are satisfied that the Kansas judgment is entitled to full faith and credit, we cannot be assured on this record that the amount of the judgment is correct. Defendants contend that the amount of the judgment is incorrect because it is not consistent with the amount of the judgment entered in the Kansas court and because it does not reflect credits for payments withheld by plaintiff that were justly due them. Plaintiff, on the other hand, contends that the judgment was properly calculated with the exception of a $1,476.57 credit to which they admit defendants are entitled. Since neither the judgment nor the trial court's opinion reflects how the amount of the judgment was calculated, and since the Kansas judgment was for $35,081.17, with interest at the rate of $9.11 per day after June 18, 1992, until the court signed the order, the amount of the judgment should either be recalculated or corrected by the trial court.
Accordingly, the summary judgment under review is affirmed without prejudice, to the right of defendants to apply to the trial court for a recalculation or correction of the amount of the judgment. We do not retain jurisdiction.