■ NICOLAE IONESCU, Respondent, v VICTOR BRANCOVEANU, Appellant. [668 NYS2d 164] —Order of the Appellate Term of the Supreme Court, First Department (Freedman and Davis, JJ.; McCooe, J. P., dissenting), entered September 26, 1996, which affirmed an order of the Civil Court, New York County (Debra James, J.), entered on or about November 28, 1995, denying defendant's motion to dismiss the complaint pursuant to CPLR 3211, and granting plaintiff's cross motion to amend his complaint and for discovery, unanimously reversed, on the law, without costs, defendant's motion granted, plaintiff's cross motion denied, and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendant-appellant dismissing the complaint.

Plaintiff Ionescu commenced this action to set aside a judgment of confession entered against him on the ground that it was obtained through fraud and misrepresentation. On or about August 17, 1993, Ionescu signed an "Affidavit of Confession of Judgment" stating that defendant Brancoveanu had given him a loan of $15,500 payable on demand, and authorized Brancoveanu to enter judgment against him in that amount. In November 1993, Brancoveanu entered the confessed judgment in the amount of $15,575 in the Civil Court, New York County. Subsequently, Brancoveanu brought an action upon the judgment against Ionescu in the Superior Court of New Jersey, Passaic County ("New Jersey action"). Retaining New Jersey counsel, Ionescu appeared in the action, answered the complaint and asserted counterclaims, and raised the defense that the underlying confessed judgment had been procured by fraud and deceit. He alleged that he and Brancoveanu, his attorney on previous matters, had agreed to enter into a joint venture involving the resale of automobiles in their native Rumania, and that Brancoveanu took advantage of Ionescu's poor command of the English language by misrepresenting the nature of the documents Ionescu was signing. Ionescu denied borrowing money from Brancoveanu.

Brancoveanu moved for summary judgment in the New Jersey action. By order dated July 8, 1994, the Superior Court denied the motion on condition that Ionescu post the amount of the confessed judgment with the clerk of the court, and that he move against the judgment in New York within 90 days. The order explicitly stated that "in the event [Ionescu] fails to deposit the said $15,575 within 30 day[s] or fails to move against the judgment in New York within 90 days, judgment may be

entered against [Ionescu] on the New York judgment." Ionescu failed to meet either of these conditions and, instead, moved for reconsideration of the Superior Court's order, which motion was summarily denied on August 6, 1994. Brancoveanu obtained final judgment in the New Jersey action on October 21, 1994, and judgment was executed on or about April 25, 1995.

Meanwhile, Ionescu commenced the present action to set aside the judgment of confession in New York County Civil Court by summons and complaint dated November 3, 1994, approximately one month past the 90-day period granted by the New Jersey court. He alleged that the judgment of confession was obtained by fraud, was invalidly executed and was unsupported by any consideration since the underlying loan never existed. Brancoveanu answered and moved to dismiss the action pursuant to CPLR 3211 (a) (4) and (7), arguing that Ionescu's claims were already litigated in the New Jersey action and were untenable as a matter of law. Brancoveanu also noted that Ionescu had satisfied the judgment in New Jersey by tendering the full amount of the confessed judgment, plus interests and costs, to the Sheriff of Passaic County. Ionescu opposed the dismissal motion, arguing, *inter alia*, that the complaint stated a valid cause of action and that the New Jersey court never addressed the merits of his fraud and misrepresentation defenses.

Civil Court denied Brancoveanu's motion to dismiss, holding that he waived the right to assert the pendency of another action between the same parties for the same cause of action (CPLR 3211 [e]), and finding that the allegations in the complaint stated a valid cause of action for vacatur of the confessed judgment. The court further stated that the issues of fraud and misrepresentation were not litigated in New Jersey, and that the judgment obtained in the New Jersey enforcement action was not a determination on the merits. The court granted Ionescu's cross motion to amend the complaint and for discovery.

The Appellate Term (McCooe, J. P., dissenting) affirmed. The majority upheld the sufficiency of the cause of action and stated that "the validity of the confession of judgment was not actually litigated, squarely addressed and specifically decided in the New Jersey enforcement action". The dissenting Judge would have dismissed the complaint, reasoning that by appearing and answering in the New Jersey enforcement action, Ionescu submitted to the jurisdiction of the New Jersey court and was therefore bound by its judgment under the full faith and credit doctrine (US Const, art IV, § 1). We agree with the

dissenter at the Appellate Term and reverse the order of that court.

The full faith and credit doctrine "requires recognition of [a] foreign judgment as proof of the prior-out-of-State litigation and gives it res judicata effect, thus avoiding relitigation of issues in one State which have already been decided in another" (citations omitted) (*Matter of Farmland Dairies v Barber*, 65 NY2d 51, 55; *see also*, US Const, art IV, § 1). Review of a foreign judgment by the forum State "is limited to determining whether the rendering court had jurisdiction, an inquiry which includes due process considerations" (*Fiore v Oakwood Plaza Shopping Ctr.*, 78 NY2d 572, 577, *cert denied* 506 US 823; *see also*, *GNOC Corp. v Cappelletti*, 208 AD2d 498; *Matter of Susan G. v Martin L.*, 186 AD2d 29, *appeal dismissed* 81 NY2d 782). So long as jurisdiction has been obtained, a defendant's default in the rendering State will not nullify the res judicata effect of the judgment and the full faith and credit doctrine still applies (*see*, *Parker v Hoefer*, 2 NY2d 612, 616, *cert denied* 355 US 833; *Matter of Susan G. v Martin L.*, *supra*; *Security Benefit Life Ins. Co. v TFS Ins. Agency*, 279 NJ Super 419, 424, 652 A2d 1261; *but see*, *Boorman v Deutsch*, 152 AD2d 48, 52, *lv dismissed* 76 NY2d 889).

As the dissenting Judge at the Appellate Term found, there is no question that Ionescu submitted to the jurisdiction of the New Jersey court by appearing with counsel and contesting the enforcement action. It is also not disputed that in the New Jersey action, Ionescu raised the defenses that the confessed judgment had been obtained by fraud and misrepresentation. Thus, the record demonstrates that the New Jersey judgment was not infirm due to an absence of jurisdiction or to the denial of notice and an opportunity to challenge the validity of the underlying confessed judgment.

The fact that Ionescu's fraud and misrepresentation claims were never litigated on the merits in the New Jersey action does not alter the outcome. "A judgment in one action is conclusive in a later one not only as to any matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first" (*Schuylkill Fuel Corp. v Nieberg Realty Corp.*, 250 NY 304, 306-307; *see also*, *Matter of Morgan Guar. Trust Co.*, 28 NY2d 155, 163, *cert denied sub nom. Dowell v Acheson*, 404 US 826; *Robbins v Growney*, 229 AD2d 356, 357). New Jersey law, which governs here (*see*, *Marrese v American Academy of Or-*

*thopedic Surgeons*, 470 US 373, 380 [preclusive effect of a judgment determined by the law of the jurisdiction which rendered it]; *Riley v New York Trust Co.*, 315 US 343, 349-350; Restatement [Second] of Conflict of Laws § 95, comment *e*), also requires that preclusive effect be given to matters which might have been litigated (*City of Newark v North Jersey Dist. Water Supply Commn.*, 106 NJ Super 88, 254 A2d 313, *affd* 54 NJ 258, 255 A2d 193; *Reeves v Jersey City*, 30 NJ Super 392, 400, 104 A2d 854, 858, *affd* 16 NJ 529, 109 A2d 610). The two actions in the instant case have sufficient similarity such that any action taken by a New York court on the underlying judgment would in effect undo what the New Jersey court had already decided.

The New Jersey court addressed Ionescu's defenses by directing him to move to challenge the New York confessed judgment within 90 days. Ionescu failed to do so in a timely manner, and also did not post the amount of the judgment as directed. These conditions were authorized under New Jersey procedural law (NJ Rules of Ct rule 4:46-4 ["(l)eave to proceed may be given unconditionally, or upon such terms as to giving security, or time or mode of trial, or otherwise"]), and, given the clear evidence of an existing judgment against Ionescu, was neither oppressive nor unfair. Indeed, once Brancoveanu sought execution, sufficient funds became available and Ionescu satisfied the judgment in full. Accordingly, once Ionescu defaulted on the conditions set by the New Jersey court, he waived any further right to attack the confessed judgment on the grounds of fraud and misrepresentation (*see, Matter of Morgan Guar. Trust Co., supra,* at 163; *Boorman v Deutsch, supra,* at 53; *Security Benefit Life Ins. Co. v TFS Ins. Agency, supra,* at 425), and judgment was properly entered against him in New Jersey. This judgment, no less than any other judgment rendered by a court with jurisdiction over defendant, is entitled to the full faith and credit of all sister States, including this one. Concur—Ellerin, J. P., Williams, Tom and Mazzarelli, JJ.